# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
### WESTERN DIVISION

---

BAKUR JAPHARIDZE,

    Petitioner,

    v.                            Case No. 2:26-cv-02470-BCL-atc

CHRISTOPHER BULLOCK, et al.,

    Respondent.

---

### ORDER DENYING TEMPORARY RESTRAINING ORDER AND § 2241 PETITION

---

Petitioner Bakur Japharidze has filed a Petition for Habeas Corpus under 28 U.S.C. § 2241, by which he challenges his detention without an individualized bond hearing. Doc. 1. Contemporaneously, Petitioner filed a Motion for Temporary Restraining Order and Preliminary Injunction. Doc. 2. Petitioner seeks immediate stay of his removal from the United States and the Western District of Tennessee pending resolution of his Habeas Corpus petition. *Id.* at 2.

As a preliminary housekeeping matter, the United States Court of Appeals for the Sixth Circuit has held that the "district director"—now the Field Office Director—for the place of confinement is the proper respondent to a Section 2241 petition filed by an alien challenging his confinement. *See Roman v. Ashcroft*, 340 F.3d 314, 320–21 (6th Cir. 2003). Here, that is now Christopher Bullock, Field Office Director for the New Orleans Field Office, United States Immigration and Customs Enforcement. The Clerk is therefore **DIRECTED** to modify the docket. *See* Fed. R. Civ. P. 25(d). All other respondents are **DISMISSED.**

1

As to the merits of the Petition for Habeas Corpus and Petitioner's Motion for a Temporary Restraining Order and Preliminary Injunction, the Petition (Doc. 1) and Motion (Doc. 2) are **DENIED** for the reasons that follow.

## BACKGROUND

Petitioner is a citizen of Russia. Doc. 1 at 4. He arrived in the United States on April 6, 2023, at or near San Luis, Arizona, without inspection. *Id*. Petitioner was released into the interior and served with a Notice to Appear charging him as inadmissible under INA § 212(a)(6)(A)(i) on the grounds that he is an alien present in the United States without having been admitted or paroled, or who entered the United States at a time or place not designated by the Attorney General. *Id*. Petitioner filed for asylum with the Immigration Court and his application remains pending. *Id*.

On April 4, 2026, Petitioner was detained by police for driving with a suspended driver's license. *Id*. Immigration and Customs Enforcement ("ICE") officers assumed custody of Petitioner, and he was transferred to the West Tennessee Detention Facility where he is currently detained. *Id*. at 4-5.

## LEGAL STANDARD

Section 2241 authorizes a court to issue a writ of habeas corpus when an individual "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). An alien seeking to challenge his detention relating to removal proceedings may in some circumstances seek relief through a Section 2241 petition. *See, e.g.*, *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

Temporary restraining orders and preliminary injunctions are "extraordinary equitable remed[ies] that [are] never awarded as of right." *Starbucks Corp. v. McKinney*, 602 U.S. 339, 345–46 (2024) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008)). To obtain such

2

relief, the movant must "make a clear showing that 'he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.'" *Id.* at 346 (quoting *Winter*, 555 U.S. at 20). "Thus, '[t]he party seeking a preliminary injunction bears the burden of justifying such relief.'" *A.C.L.U. Fund of Mich. v. Livingston Cnty.*, 796 F.3d 636, 642 (6th Cir. 2015) (quoting *McNeilly v. Land*, 684 F.3d 611, 615 (6th Cir. 2012)). "If the plaintiff fails to show a likelihood of success on the merits, the court may deny [the motion for a temporary restraining order] without any further consideration." *U.S. Sportsmen's All. Found. v. Ctrs. for Disease Control & Prevention*, 167 F.4th 813, 818 (6th Cir. 2026) (citing *Wilson v. Williams*, 961 F.3d 829, 844 (6th Cir. 2020)).

## ANALYSIS

The Court denies both the Petition and the Motion because Petitioner's claims fail on their merits. Petitioner's failure to exhaust his administrative remedies dooms his statutory claims, which in any event fail on their merits. And Petitioner's detention as required by statute does not violate the Constitution.

### I.      Petitioner's claims challenging application of 8 U.S.C. § 1225.

### A.  The Exhaustion Doctrine precludes review of Petitioner's statutory claim.

The Supreme Court "long has acknowledged the general rule that parties exhaust prescribed administrative remedies before seeking relief from the federal courts." *McCarthy v. Madigan*, 503 U.S. 140, 144 (1992). That requirement makes obvious sense when Congress requires exhaustion. It arguably makes less sense when, as in Section 2241, Congress has not done so. Perhaps the so-called prudential exhaustion doctrine—a matter of "sound judicial discretion," *id.*—can be explained as an aspect of ripeness, the idea being that there is no ripe dispute if the Executive Branch has not had its final say. Or perhaps it is a shirking of the federal courts'

"virtually unflagging" duty to exercise jurisdiction in cases properly before them. *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 126 (2014) (quoting *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 77 (2013)).

In any event, both the Supreme Court and the Sixth Circuit have embraced the doctrine, which is thus binding on this Court. *See, e.g.*, *McCarthy*, 503 U.S. at 144; *Shearson v. Holder*, 725 F.3d 588, 593–94 (6th Cir. 2013). Exhaustion gives an agency "the opportunity to correct its own mistakes with respect to the programs it administers"; "discourages disregard of the agency's procedures"; promotes efficiency because "[c]laims generally can be resolved much more quickly and economically before an agency"; and "may produce a useful record for subsequent judicial consideration." *Woodford v. Ngo*, 548 U.S. 81, 89 (2006) (quotation marks and citations omitted). True, the exhaustion requirement can be excused if exhaustion would be futile. But, as the Sixth Circuit has recently explained, in determining whether exhaustion would be futile, "the crucial inquiry [is] whether the agency can provide the relief requested if the argument succeeds, not whether it is likely to succeed." *Smith v. U.S. Sec. & Exch. Comm'n*, 171 F.4th 798, 810 (6th Cir. 2026).[1] And, here, while an individual immigration judge may be bound by the *Yajure Hurtado* decision cited by Petitioner, the Board of Immigration Appeals ("BIA") could certainly grant Petitioner a bond hearing or release on bond if he were to prevail on his claims; indeed, the whole theory of his claims is that the law compels the immigration judge to give him such a hearing (and not, say, that the federal courts should be stepping in to run bond proceedings on a categorical basis). While Petitioner's desired result may be foreclosed at the initial stage, nothing prevents the

---

[1] *Smith* addressed the futility exception in the context of an express exhaustion requirement that excepted situations in which "there was reasonable ground for . . . failure to" exhaust. 171 F.4th at 811 (quoting 15 U.S.C. § 78y(c)(1)). That makes no difference: There is no logical reason for treating the concept of futility differently in the context of a prudential rule than in the context of a statute with a generally worded exception that encompasses the concept of futility.

4

BIA from changing course upon appellate review. If Petitioner is correct on his statutory claims, he is depriving the BIA of "the opportunity to correct its own mistakes" and "produce a useful record for subsequent judicial consideration." *See Woodford*, 548 U.S. at 89. Petitioner's statutory claims are thus barred by the exhaustion doctrine and due to be rejected for that reason alone.

> **B. Under the governing statutes, Petitioner is an "applicant seeking admission" subject to mandatory detention.**

Even if they were not barred by the exhaustion doctrine, Petitioner's statutory claims fail on the merits. Petitioner's statutory eligibility for a bond hearing is determined by whether his detention is governed by 8 U.S.C. § 1225(b)(2) or 8 U.S.C. § 1226(a). Section 1225(b)(2) provides:

> Subject to subparagraphs (B) and (C), in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title.

8 U.S.C. § 1225(b)(2)(A). In contrast, Section 1226(a) provides, in relevant part:

> On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States. Except as provided in subsection (c) and pending such decision, the Attorney General--
>
> **(1)** may continue to detain the arrested alien; and
>
> **(2)** may release the alien on--
>
>> **(A)** bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General; or
>>
>> **(B)** conditional parole . . . .

8 U.S.C. § 1226(a)(1)–(2).

 "Congress defined 'applicant for admission' broadly in Section 1225(a)(1) to include all 'alien[s] present in the United States who have not been admitted.'" *Buenrostro-Mendez v. Bondi*, 166 F.4th 494, 504 (5th Cir. 2026); *see* 8 U.S.C. § 1225(a)(1) ("An alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated

port of arrival and including an alien who is brought to the United States after having been interdicted in international or United States waters) shall be deemed for purposes of this chapter an applicant for admission.").[2] That definition encompasses Petitioner because he is present in the United States without ever having been legally admitted—as confirmed by the fact that he currently faces removal proceedings and was released into the United States subject to a related notice to appear. *See* Doc. 2 at 2; *Avila v. Bondi*, 170 F.4th 1128, 1135-36 (8th Cir. 2026). The passage of time makes no difference. Unless and until Petitioner is granted authorization and lawfully admitted into the United States, he remains an "applicant for admission." As such, the Petitioner's detention during removal proceedings was mandatory under Section 1225(b)(2).

Petitioner argues that Section 1225 does not apply to noncitizens already in the interior of the United States. Doc. 1 at 6-7, 9. That argument is inconsistent with the actual statutory language which sweeps broadly to cover all "applicant[s] for admission." As both the Fifth and Eighth Circuits have held, "the ordinary meanings of the phrases 'applicant for admission' and 'seeking admission' are the same," *Avila*, 2026 WL 819258, at \*2, because "when a person applies for something, they are necessarily seeking it," *Buenrostro-Mendez*, 166 F.4th at 502. *See also* 8 U.S.C. § 1225(a)(3) (referring to aliens "who are applicants for admission *or otherwise* seeking admission") (emphasis added). The statutory context confirms the point: The statute does not say that an applicant for admission must be detained "if" he is seeking admission, which strongly suggests that the two phrases do not impose separate conditions. *See Avila*, 2026 WL 819258, at \*2. Moreover, to the extent Petitioner seeks to remain in the country—as he presumably does

---

[2] Statutory language underscores the point in providing that "'admission'. . . mean[s], with respect to an alien, the *lawful* entry of the alien into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13) (emphasis added). Until his entry into the United States is lawful, Petitioner remains an "applicant for admission," and thus his detention during removal proceedings is mandatory under Section 1225(b)(2). *See Avila v. Bondi*, 170 F.4th at 1135-36.

because he is not consenting to be removed—he is "seeking admission" even on his own reading of that phrase as a separate condition.

Petitioner further argues that Section 1225 applies only to those apprehended at or near the border upon arrival or shortly thereafter, not to those arrested in the interior months, years, or decades later because mandatory detention for all who enter without inspection would render superfluous other parts of Section 1225(b)(2)(A), Section 1226(c), and the Laken Riley Act, Pub. L. No. 119-1, 139 Stat. 3 (2025). Doc. 1 at 7-8. Not so. That Section 1225(b)(2)(A) requires Petitioner's detention in no way renders superfluous the statutory exception to detention for those aliens who were deemed by an "examining immigration office" to be "clearly and beyond a doubt entitled to be admitted." The exception can apply to other aliens, even if Petitioner has no hope of it because he entered without presenting himself. And Petitioner's other anti-superfluity arguments likewise fail: Section "1226(c) and the Laken Riley Act do not mandate the detention of aliens who otherwise would *not* be subject to mandatory detention, but instead they mandate the *timing* of the detention of certain aliens"—specifically, by providing that those aliens shall be detained following release from an underlying offense. *Gomez v. Daley*, No. 2:25-CV-00150-SCM, 2026 WL 252496, at *6 (E.D. Ky. Jan. 30, 2026); *see also Gomez Hernandez v. Lyons*, No. 1:25-CV-216-H, 2026 WL 31775, at *7 (N.D. Tex. Jan. 6, 2026) ("[T]he [Laken Riley Act] was not meaningless—it narrowed the discretion afforded to any Administration exercising detention authority under Section 1226."). Petitioner's anti-superfluity argument is thus baseless—but even if there were some superfluity that would not justify rewriting the plain text of Section 1225. *See Barton v. Barr*, 590 U.S. 222, 239 (2020). Petitioner's statutory challenge to his detention therefore fails.

II.   **Subjecting Petitioner to mandatory detention as required by a faithful interpretation of Section 1225 did not violate the Due Process Clause.**

The exhaustion doctrine does not bar review of Petitioner's constitutional claims because the BIA cannot adjudicate them. *See Smith*, 171 F.4th at 810; *Bangura v. Hansen*, 434 F.3d 487, 494 (6th Cir. 2006) (citations omitted). Therefore, the Court will not require exhaustion. But those claims also fail on the merits.

Petitioner claims that his arrest and subsequent detention without an individualized bond hearing violated the Due Process Clause. Doc. 1 at 8-9. "[T]he Fifth Amendment entitles aliens to due process of law in deportation proceedings." *Reno v. Flores*, 507 U.S. 292, 306 (1993) (citing *The Japanese Immigrant Case*, 189 U.S. 86, 100–101 (1903)). But, when a noncitizen has not been lawfully admitted to the United States, "the decisions of executive or administrative officers, acting within powers expressly conferred by Congress, are due process of law" because such noncitizens have "only those rights regarding admission that Congress has provided by statute." *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 138, 140 (2020). This is the result of "the so-called 'entry fiction' theory of immigration law," under which "[a]liens who have not 'entered the United States within the meaning of the law,' i.e., who were never lawfully admitted and do not have leave to remain, are 'still in theory of law at the boundary line,'" *Gonzalez v. Ladwig*, No. 2:26-cv-02017-MSN-atc, 2026 WL 413602, at *11 (W.D. Tenn. 2026) (Norris, J.) (quoting *Kaplan v. Tod*, 267 U.S. 228, 230–31 (1925)), where they have only those rights provided by Congress. *See Thuraissigiam*, 591 U.S. at 140. And, here, Congress did not provide a right to a bond hearing. 8 U.S.C. § 1225(b)(2)(A).

In sum, neither the governing statutes nor the Constitution prevent Petitioner's detention in connection with removal proceedings or guarantee Petitioner a bond hearing during that process. Those claims therefore do not support the Petition. Accordingly, it is apparent from the application that Petitioner is not entitled to the writ. 28 U.S.C. § 2243.

8

**CONCLUSION**

For the foregoing reasons, the Petition for Writ of Habeas Corpus (Doc. 1) and Motion for Temporary Restraining Order and Preliminary Injunction (Doc. 2) are **DENIED**. The Clerk is **DIRECTED TO CLOSE THIS CASE**.

**IT IS SO ORDERED**, this 27th day of April, 2026.

       s/ *Brian C. Lea*
       BRIAN C. LEA
       UNITED STATES DISTRICT JUDGE